IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMEL C. LAW,

      Petitioner,

v.                                    Civil Action No. **3:19CV541**

MARK BOLSTER,

      Respondent.

## MEMORANDUM OPINION

Jamel C. Law, a federal inmate proceeding *pro se*, brings this petition pursuant to

28 U.S.C. § 2241 ("§ 2241 Petition," ECF No. 1), challenging his conviction within the Bureau

of Prisons ("BOP") for the institutional infraction of introduction of drugs/alcohol in violation of

BOP Disciplinary Code 111A. The Court has liberally construed Law's submissions to raise the

following claims for relief:[1]

> Claim One:    Law did not receive a "DHO/Hearing Record and that has prejudiced his ability to file a meaningful appeal."[2] (ECF No. 1, at 6; ECF No. 7, at 1; *see also* ECF No. 9, at 2.)
>
> Claim Two:    "The BOP does not have the authority to change the factual basis (section 11) of a[n] Incident Report/Charging document." (ECF No. 7, at 1; *see also* ECF No. 9, at 2.)
>
> Claim Three:    "There is insufficient evidence to support the finding" of guilty. (ECF No. 7, at 1; *see also* ECF No. 9, at 2.)

Respondent has filed a Motion for Summary Judgment. (ECF No. 10.) Law did not file

a response. For the reasons set forth below, Respondent Mark Bolster's Motion for Summary

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. To the extent possible, the Court corrects the spelling, capitalization, and punctuation in the quotations from the parties' submissions.

[2] The term "DHO," as applied here, is an abbreviation for "Disciplinary Hearing Officer."

Judgment (ECF No. 10) will be DENIED WITHOUT PREJUDICE as to Claim One and GRANTED as to Claims Two and Three.

## I.  Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  It is the responsibility of the party seeking summary judgment to inform the Court of the basis for the motion, and to identify the parts of the record that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted).  When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).  "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448).  Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to

support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Respondent submits:  (1) the Declaration of Sylvia Harris, a Legal Assistant at the Federal Correctional Complex in Petersburg, Virginia, ("Harris Decl.," ECF No. 11–1); (2) a copy of an Incident Report, dated December 5, 2018, (ECF No. 11–2); (3) a copy of a Notice of Discipline Hearing Before the DHO form, (ECF No. 11–3); (4) a copy of an Inmate Rights at Discipline Hearing form (ECF No. 11–4); and, (5) a copy of a DHO Report, dated August 9, 2019, (ECF No. 11–5).

At this stage, the Court must assess whether Law "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added).  As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324.

As required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Respondent advised Law of his right to respond to the Motion for Summary Judgment and specifically admonished Law that he must "set forth [his] version of facts by offering affidavits . . . or . . . sworn statements." (ECF No. 10, at 2–3.)  Notwithstanding this fact, Law failed to file a response to the Motion for Summary Judgment.  Law did, however, swear under penalty of perjury to the contents of his § 2241 Petition (ECF No. 1, at 9), and previously submitted a DECLARATION BY JAMEL LAW IN SUPPORT OF § 2241 (ECF No. 7, at 6), which included a BOP Memorandum, dated August 7, 2018, as an attachment, (*id.* at 7).

3

In light of the foregoing principles and submissions, the following facts are established for purposes of the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Law.

## II.  Summary of Pertinent Facts

Law is currently serving a 188–month sentence for various narcotics violations. (Harris Decl. ¶ 4.)[3] During the relevant time periods, Law was incarcerated at the Federal Correctional Institution in Petersburg, Virginia ("FCI Petersburg"). (*Id.* ¶ 5.)

On December 5, 2018, Kevin Edmonds was inspecting outgoing letters and visitation forms from Law. (ECF No. 11–2, at 2.) In his Incident Report, Edmonds described the contents of the first letter, which was addressed to "Law Law," as follows:

> Listen dawg everybody in this spot blowing on K–2 cause it don't show up in no urine test and there is no way to detect that shit and it is not illegal. Muf**kas order it off the internet out there.  In here all they do is give a muf**ka the same contraband shot they give you for having or smoking a cigarette and maybe 20 days in the hole.  If you can't do it then get somebody else to do it.  Go on the internet and google cloud–9–(nine).  It is a company that sell K–2 in powder form and make sure it's the one made with bath salts and not PCP/ order a 2 ounce jar.  It should cost like 80 or 90 dollars a jar.  Then google D–Nature.  They sell alcohol.  Order an 8 ounce bottle of that.  The white kind.  Then go to the dollar store and buy a 10 to 12 ounce empty spray bottle and a regular Christmas card.  Mix the liquid and the powder together in the spray bottle, then lay the card down on a cookie sheet and shake the mix up real good and spray the card.  Not too much.  Just wet it up then turn it over and spray the back of it and let it dry.  Then keep doing that until the whole bottle is gone and make sure you shake it up real good every time before you spray the card.  Im a send you the person info in here who it is coming to and the person name his sister name as the sender who sent it in here to him.  But don't talk about it on the phone and don't write me back talking about it cause they open mail coming in but not going out.  Nothing illegal about none of this shit and that one card going to make about 12 to 15 hundred.  It is nothing to detect that shit coming in, [n-word] I f**k with already moving but he gave me the game.

(*Id.*) A second letter, addressed to Jamel Armfield, contained "the same verbiage as the [first] letter." (*Id.*)

---

[3] The Court omits any secondary citations in the Harris Declaration, unless otherwise noted.

4

On December 5, 2018, a copy of the Incident Report was delivered to Law by K. Beck.
(*Id.*) Law was advised of his right to remain silent. (*Id.* at 4.) At that time, Law declined to
make a statement. (*Id.*)

On December 10, 2018, Law appeared before the Unit Discipline Committee ("UDC") to
answer for the charges of introduction of drugs/alcohol, in violation of BOP Disciplinary Code
111, "mail abuse," in violation of BOP Disciplinary Code 196, and disruptive conduct, in
violation of BOP Disciplinary Code 199. (*Id.* at 2–3.) During the UDC hearing, Law said, "I
never put any letters in the mailbox, they were sitting on the desk. I didn't write any of that
stuff." (*Id.*) The matter was referred to the DHO for further inquiry. (*Id.*) At the UDC hearing,
Law was given a Notice of Discipline Hearing before the DHO and advised of his rights. (Harris
Decl. ¶ 9.)

On January 28, 2019, Law appeared before the DHO. (*Id.* ¶ 10.) Law waived his right to
present witnesses and his right to have a staff representative appear on his behalf. (*Id.*) Law
acknowledged that he had received a copy of the Incident Report and that he understood his
rights in the DHO hearing. (*Id.* ¶ 11.) Law did not raise any issues or concerns with the
discipline process at that time. (*Id.*) Law made the following initial statement to the DHO: "I
did not write the letters. Someone is trying to set me up. Before this incident SIS Edmonds told
me that I was being targeted. I told him that I don't fear for my life." (*Id.*; *see also* ECF No. 11–
5, at 2.) In addition to the Incident Report, the DHO reviewed, *inter alia*, a "TRUVIEW
monitored Address report" for Law, and "outgoing letters and envelopes." (ECF No. 11–5, at 3.)

Roughly nine months later, on August 9, 2019, the DHO completed the DHO Report.
(*Id.* at 5.) The DHO found that Law had committed the prohibited act of attempting to introduce
drugs/alcohol into the facility. (*Id.* at 3.) The DHO credited the account of Edmonds and
specifically rejected the testimony of Law, finding it to be neither sincere nor believable. (*Id.* at

5

3–4.) The DHO pointed out that, based upon the TRUVIEW address report, the letters were

directed to people that Law knew. (*Id.* at 4.) The DHO further relied on the fact that Law

conceded at the hearing that the addressed envelopes belonged to him. (*Id.*) The DHO also cited

Law's admission that the letters contained information that was personal to him. (*Id.*) Finally,

the DHO noted that she gave Law an opportunity to explain his allegation that he had previously

been "targeted," and Law failed to provide any support. (*Id.*)

The DHO sanctioned Law by disallowing forty-one days of good conduct time ("GCT"),

imposing fifteen days in disciplinary segregation, and imposing six months' loss of phone and

email use. (*Id.* at 5.) As justification for the disciplinary conviction and sentence, the DHO

provided the following explanation for her decision:

> The action/behavior on the part of any inmate to use/possess/introduce drugs or
> alcohol threatens not only the health, safety and welfare of himself, but that of all
> other inmates and staff within the institution. The mere presence of drugs/alcohol
> in a correctional facility creates an environment conducive to violence. In the past,
> inmates under the influence of drugs/alcohol have become violent towards others,
> which cannot and will not be tolerated. The sanctions imposed by the DHO were
> taken to let the inmate know that he, and he alone, will be held responsible for his
> actions/behavior at all times.

(*Id.*)

### III. Analysis

The Court will deny the Motion for Summary Judgment without prejudice as to Claim

One but direct Law to show cause why, given the DHO report needed to file his appeal contained

in the record of this litigation, this claim should not be dismissed as moot. The Court will grant

the Motion for Summary Judgment as to Claim Two because Law brings only conclusory

allegations that fail to create a genuine dispute of material fact regarding any changes to the

Incident Report. The Court will also grant the Motion for Summary Judgment as to Claim Three

because the record shows that sufficient evidence supported his disciplinary conviction.

**A. <u>The Court Will deny the Motion Without Prejudice as to Claim One</u>**

In Claim One, Law alleges that he did not receive a "DHO/Hearing Record and that has prejudiced his ability to file a meaningful appeal." (ECF No. 7, at 1.) Respondent avers that Claim One is moot because an individual identified as "W. Pistory, CC," allegedly delivered a copy of the DHO report to Law on October 15, 2019. (ECF No. 11, at 2.) However, in his declaration, which was dated November 24, 2019, Law swears that:

> It is common for legal mail to never be received at FCI Beckley unless it is reviewed prior and deemed necessary.  I have not received a DHO Report.
> I have not received a DHO report with this court filing either.  It is likely that it has been removed and placed in my central file.  But I have not received it.
> The Respondent has failed to provide any proof that I have received a DHO report.  This is a battle of affidavits with conflicting evidence.

(ECF No. 7, at 6 (paragraph numbers omitted).)

By Memorandum Order entered on July 1, 2020, the Court denied without prejudice Respondent's prior Motion for Summary Judgment as to Claim One because a "there exist[ed] a material dispute of fact as to whether Law has received a copy of the DHO report." (ECF No. 9, at 2.) Respondent's latest submission fails to produce any *new* evidence pertaining to this issue. Thus, the "material dispute of fact" that previously precluded the entry of summary judgment on Claim One still persists.  Accordingly, Respondent's Motion for Summary Judgment again will be DENIED WITHOUT PREJUDICE.

Notwithstanding any factual dispute that may exist as to whether Law received a copy of the DHO report from "W. Pistory, CC," the record before the Court indicates that, incident to litigating this action, Respondent has provided Law with a copy of the DHO report as an attachment to the Motion for Summary Judgment. (*See* ECF No. 11–5.)  Accordingly, Law will be DIRECTED to show cause, within fifteen (15) days of the Court entering this Memorandum Opinion and Order, and explain why Claim One should not be dismissed as moot after receiving

7

the DHO report. *See Powell v. McCormack*, 395 U.S. 486, 496 (1969) (citation omitted) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."); *Ross v. Reed*, 719 F.2d 689, 693–94 (4th Cir. 1983) ("If intervening factual or legal events effectively dispel the case or controversy during pendency of the suit, [a] federal court[] [is] powerless to decide the questions presented."); *see also Shahan v. Ormond*, No. 3:18cv200, 2018 WL 6681210, at *4 (E.D. Va. Dec. 19, 2018) (concluding that an inmate's claim regarding his failure to receive the DHO Report was moot because, after initiating the action, the inmate received a copy of the DHO Report), *aff'd*, 778 F. App'x 217 (4th Cir. 2019).

### B. The Court Will Grant the Motion as to Claim Two

In Claim Two, Law argues that "[t]he BOP does not have the authority to change the factual basis (section 11) of a[n] Incident Report/Charging document." (ECF No. 7, at 1.) Respondent correctly points out that Law's "summary conclusion that the DHO and BOP staff changed the factual basis of the Incident Report is devoid of any support in the record." (ECF No. 11, at 14 (internal quotation marks omitted).) Indeed, Law's allegation lacks basic information to support his claim, including, but not limited to, the identity of the person or persons that Law maintains changed the Incident Report, the approximate time frame when Law maintains the Incident Report was altered, or even the manner in which the Incident Report was changed. Consequently, Law's allegations are conclusory and fail to create a material dispute of fact. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (internal quotation marks omitted) (citations omitted) ("[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment"). Accordingly, Respondent's Motion for Summary Judgment will be GRANTED as to Claim Two.

## C. **The Court Will Grant the Motion as to Claim Three**

In Claim Three, Law argues that "[t]here is insufficient evidence to support the finding" of guilt concerning his attempt to introduce drugs or alcohol into FCI Petersburg. (ECF No. 7, at 1.)

It is well settled that "the requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board to revoke [GCT]." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985) (emphasis added). The Supreme Court emphasized that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56 (citations omitted).

The DHO found that Law committed the prohibited of act of attempting to introduce drugs/alcohol into the facility. (ECF No. 11–5, at 3.) That conclusion is supported by more than merely "some evidence." *Hill*, 472 U.S. at 455. Law wrote and attempted to send two letters that expressly solicited the introduction of "K–2" into the facility. (ECF No. 11–5, at 3–4.) Law knew that the activities he suggested were in contravention of institutional policy because he discussed the possible penalties he could face and instructed the recipient on how to avoid detection. (*Id.*) The letters made clear that profit motivated Law's actions. (*Id.* at 4.) As the DHO pointed out, the letters were directed to people that Law knew. (*Id.* at 4.)

Moreover, Law conceded at the hearing that the addressed envelopes belonged to him and that the letters contained information that was personal to him, including the fact that he was a grandfather. (*Id.*) Law also signed the letters with his nickname. (*Id.*) The DHO clearly considered Law's claims of innocence and explained the reasons for rejecting them. (*Id.*) Law was given an opportunity to explain his allegations that he had previously been "targeted" and

was "set–up," however, Law failed to provide any support for those assertions. (*Id.*) Simply put, the DHO credited the account of Edmonds and rejected the testimony of Law, which she found to be neither sincere nor believable. (*Id.* at 3–4.)

In sum, a review of the record reveals that Law's disciplinary conviction was supported by sufficient evidence. Accordingly, the Motion for Summary Judgment will be GRANTED with respect to Claim Three.

## IV. Conclusion

For the reasons stated above, the Motion for Summary Judgment (ECF No. 10) will be DENIED WITHOUT PREJUDICE with respect to Claim One and GRANTED as to Claims Two and Three. Claims Two and Three will be DISMISSED.

The Court will DIRECT that Law show cause, within fifteen (15) days of the Court entering this Memorandum and Opinion, and explain why Claim One should not be dismissed as moot.

An appropriate Order will accompany this Memorandum Opinion.

_____ /s/

M. Hannah Lauck
United States District Judge

Date: 9-14-21
Richmond, Virginia